Filed 3/8/24  In re M.S. CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re M.S., a Person Coming Under the Juvenile Court Law. | C098657 |
| THE PEOPLE, | (Super. Ct. No. JV140118) |
| Plaintiff and Respondent, | |
| v. | |
| M.S., | |
| Defendant and Appellant. | |

M.S. appeals following a 2023 juvenile court disposition order committing him to a secure youth treatment facility.  His arguments in this appeal, however, focus on two 2020 disposition orders that he never appealed.  We affirm the 2023 order, the only order properly before us, and find M.S.'s failure to timely appeal the 2020 orders deprives us of jurisdiction to revisit those orders here.

1

BACKGROUND

In 2019, a juvenile wardship petition was filed against M.S. under Welfare and Institutions Code section 602,[1] alleging that he committed a lewd and lascivious act on a 13-year-old child. (Pen. Code, § 288, subd. (a).) The juvenile court sustained the petition after M.S. admitted to committing a reasonably related offense—a misdemeanor violation of Penal Code former section 288a, subdivision (b)(1) (now Penal Code section 287, subdivision (b)(1)). (Stats. 2018, ch. 423, § 49.) In a 2019 disposition, the court placed M.S. on probation for six months under section 725, subdivision (a) without making him a ward of the court and ordered him to participate in a treatment program on sexual boundaries. (See § 725, subd. (a) [authorizing a juvenile court to place a minor on probation "for a period not to exceed six months" without adjudging the minor a ward of the court].)

Two months later, in January 2020, the juvenile court modified its probation conditions after receiving a psychological evaluation and recommendation from the probation officer. The probation officer thought the ordered program on sexual boundaries would be insufficient given M.S.'s alleged conduct, which involved trapping the victim in a bathroom stall, choking her, and requiring her to perform oral sex on him. Believing this conduct required a more involved program, the probation officer recommended that M.S. be ordered to participate in a juvenile sex offender treatment program (JSO program). The juvenile court agreed. It restarted M.S.'s six-month probation term and ordered him to participate in the JSO program. Although defense counsel objected that the JSO program would take 12 to 18 months and so could not be completed in the six-month probation period, the juvenile court indicated the probation period could be extended if M.S. performed well on probation.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

Just shy of six months later, in July 2020, the juvenile court (now a different judge) noted that M.S. had not yet completed the JSO program. It also found it inappropriate to extend probation another six months under section 725, subdivision (a), reasoning that M.S. still needed at least 10 more months to complete the JSO program. For that reason, and over defense counsel's objection that M.S. had done everything he possibly could do to successfully complete probation, the juvenile court found M.S. failed probation, made him a ward of the court, and told M.S. he needed to complete the JSO program.

In August 2021, a new section 602 juvenile wardship petition was filed against M.S., alleging that he unlawfully possessed a firearm (Pen. Code, § 29610) and drew a firearm on another person (*id.*, § 417, subd. (a)(2)). The juvenile court sustained the petition after M.S. admitted to both counts and continued M.S. as a ward of the court.

In December 2022, another section 602 juvenile wardship petition was filed against M.S., alleging that he robbed two individuals. (Pen. Code, § 211.) The court sustained the petition after M.S. admitted to one of the robbery counts, with the prosecutor dismissing the second count in consideration of the admission. In a 2023 disposition, the juvenile court continued M.S. as a ward of the court and committed him to a secure youth treatment facility with a baseline term of 15 months and a maximum term of four years two months. M.S. timely appealed the 2023 disposition, filing his notice of appeal in May 2023. M.S. filed his opening brief in September 2023, and this case was fully briefed on January 31, 2024.

## DISCUSSION

M.S. focuses his argument on two 2020 orders that he never appealed—(1) the January 2020 order that modified the probation conditions for his sexual assault offense, and (2) the July 2020 order that made him a ward of the court based on his failure to satisfy those modified conditions. Starting with the January 2020 order, M.S. asserts the juvenile court improperly imposed an impossible probation condition—namely, it

3

required him to complete a JSO program that would take at least 12 months, even though the probation period was only six months. Turning to the July 2020 order, he contends the court wrongly made him a ward of the court for failing to complete this impossible condition, rather than, as it should have, found he complied with all permissible probation conditions, dismissed the petition for his sexual assault offense, and sealed the record. We will not address these claims, finding we lack jurisdiction to consider the unappealed 2020 orders.

Our decision follows from well-established principles of appellate jurisdiction. A minor may appeal a judgment (or postjudgment order) in a section 602 proceeding "in the same manner as any final judgment" (or postjudgment order)—which is to say, as relevant here, that a minor seeking appellate review must appeal within 60 days. (§ 800, subd. (a); Cal. Rules of Court, rule 8.406(a).) As our Supreme Court has explained, " '[a] timely notice of appeal, as a general matter, is "essential to appellate jurisdiction." ' [Citation.] 'An untimely notice of appeal is "wholly ineffectual: The delay cannot be waived, it cannot be cured by nunc pro tunc order, and the appellate court has no power to give relief, but must dismiss the appeal on motion or on its own motion." [Citation.] The purpose of the requirement of a timely notice of appeal is, self-evidently, to further the finality of judgments by causing the [party] to take an appeal expeditiously or not at all.' [Citation.] As a consequence, ' " 'an unappealed disposition or postdisposition order is final and binding and may not be attacked on an appeal from a later appealable order.' " ' " (*In re G.C.* (2020) 8 Cal.5th 1119, 1127 (*G.C.*).)

These principles are fatal to M.S.'s attempt to challenge the 2020 orders here, both of which were ripe for review in 2020. Because he never appealed these orders, he cannot now attack them on appeal from a later appealable decision.

M.S. does not dispute these general principles. But he argues we should still exercise jurisdiction over the 2020 orders based on a footnote in *G.C.* In that case, a juvenile sought to challenge one juvenile disposition—which failed to classify a wobbler

4

offense as either a misdemeanor or a felony—in an appeal from a later juvenile disposition order after the time to appeal the earlier disposition had expired. (*G.C., supra*, 8 Cal.5th at p. 1122.) Our Supreme Court found the appellate court lacked jurisdiction to consider this challenge, explaining that the minor's "failure to timely appeal deprived the appellate court of jurisdiction." (*Id.* at p. 1123.) But in a footnote, the court stated: "Because the [juvenile] court's failure to make the required declaration [in the earlier disposition] had no effect on the [later] disposition, we are not called upon to decide the scope of a minor's appellate rights when the juvenile court's omission impacts the maximum term of confinement in a subsequent proceeding." (*Id.* at p. 1129, fn. 10.)

Citing this footnote, M.S. argues we have jurisdiction over the 2020 orders because "the errors from 2020 heavily impacted the disposition of 2023." He then offers two general arguments to show this impact.

First, he suggests the juvenile court considered the record of his sexual assault offense—which again, he believes should have been sealed—when it calculated his maximum term of confinement under section 726, subdivision (d)(3). Under this provision, a court " 'may aggregate the period of physical . . . confinement for *multiple* felony counts or petitions, including previously sustained petitions,' to arrive at the maximum term of confinement." (*G.C., supra*, 8 Cal.5th at p. 1128.) Citing this language, M.S. suggests the court here increased his maximum term of confinement in the 2023 disposition based on his earlier sexual assault offense. But because M.S. offers no record citation to support this allegation, nor even discusses the maximum term of confinement imposed in this case, we treat his point as forfeited. (See *People v. Hoyt* (2020) 8 Cal.5th 892, 939 ["by failing to support his appellate arguments with record citations, defendant has forfeited any claim of error on appeal"].)

Next, M.S. contends the juvenile court might have entered a more favorable disposition had the record of his sexual assault offense not been part of the "dispositional

5

calculus." He bases his argument largely on section 875. That statute allows a juvenile court to commit a ward to a secure youth treatment facility after making certain findings. One finding a court must make is that a less restrictive alternative disposition for the ward is unsuitable after considering, among other things, "[t]he ward's previous delinquent history, including the adequacy and success of previous attempts by the juvenile court to rehabilitate the ward." (§ 875, subd. (a)(3)(B).) M.S. states, correctly, that this language required the juvenile court here to consider the record of his sexual assault offense when evaluating the propriety of a less restrictive alternative disposition. He adds that the court selected a certain placement facility because of its JSO program and imposed a new JSO condition based solely on the outstanding JSO condition from the January 2020 order.

But M.S. neglects to substantiate most of his claims. Although he claims the court selected a placement facility because of its JSO program, he offers no citation to the record. Nor does he offer any record citation when arguing that the court imposed a new JSO condition based solely on the outstanding condition from January 2020. Even in his reply brief, where he asserts "[t]he clearest indication that [his] prior failure of the JSO treatment program affected the disposition in 2023 is that there continues to exist a JSO condition," he again fails to provide any record citation. We find he forfeited any claim of error based on these unsupported claims. (See *People v. Hoyt, supra*, 8 Cal.5th at p. 939.)

And although M.S. argues the juvenile court may have found a less restrictive alternative disposition suitable had the court not considered the record of his sexual assault offense, the record is against him. The record shows M.S. had a significant delinquent history following his sexual assault offense, including unlawfully possessing a firearm, drawing a firearm on another, and robbing someone. The record further shows the court focused on M.S.'s later history, not his sexual assault offense, when deciding an appropriate disposition in 2023. Although defense counsel argued at the 2023 disposition

6

hearing that M.S.'s performance in the JSO program was the central consideration, the juvenile court disagreed. It instructed counsel "to focus on the conduct since then," explaining that the prosecution's argument was that "given the nature and severity of *those* charged offenses, . . . this is a critical time to ensure that [M.S.] is put in a place where he can take advantage of programs that are truly intended to rehabilitate him." (Italics added.) The juvenile court then, after hearing from the parties, concluded that M.S. "still ha[d] some things to learn" and that commitment to a secure youth treatment facility was appropriate. On this record, we are not persuaded that the juvenile court would have found a less restrictive alternative disposition suitable had it not considered the record of the sexual assault offense.

In the end, M.S. has neither timely appealed the 2020 orders nor shown that these orders had any effect on the 2023 disposition. We thus will not consider his challenge to the 2020 orders here.[2]

---

[2] M.S. further argues that the January 2020 order, in adding the JSO probation condition, imposed an unauthorized sentence that is correctable at any time, so long as the juvenile court has jurisdiction. But because we lack jurisdiction over the January 2020 order, we will not address this argument. (*G.C., supra*, 8 Cal.5th at p. 1130 [a court cannot correct an allegedly unauthorized sentence in a judgment unless it has jurisdiction over the judgment].)

7

DISPOSITION

The 2023 disposition order is affirmed.

                                                         /s/
                                              BOULWARE EURIE, J.

We concur:

    /s/
DUARTE, Acting P. J.

    /s/
RENNER, J.